# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 95-20156
(Summary Calendar)

---

DANIEL JOSEPH LUKEN,

Plaintiff-Appellee Cross-Appellant,

versus

JAMES A. LYNAUGH;
(JOHN DOE) SMITH,

Defendants,

and

SAMUEL COODY,

Defendant-Appellant Cross-Appellee.

---

Appeal from United States District Court
for the Southern District of Texas
(CA-H-90-2299)

---

September 13, 1996

Before JOLLY, JONES and STEWART, Circuit Judges.

PER CURIAM:[*]

Daniel Joseph Luken, an inmate incarcerated in the Texas Department of Criminal Justice

(TDCJ), filed a complaint pursuant to 42 U.S.C. §1983 alleging that he was subjected to the use of

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

excessive force by prison guard Smith and that Sergeant Samuel Coody, a supervisor, did not intervene on Luken's behalf during the incident. Following a jury trial, the district court held that "based on the jury's findings and the application of the appropriate legal conclusions," Luken prevailed and thereafter awarded Luken damages of $200 and attorney's fees of $3,350. Coody appeals, arguing that the judgment was not in accordance with the jury's verdict and that the imposition of damages and attorney's fees was therefore in error. Luken cross-appeals, arguing that the district court erred in denying Luken's motion to amend, in denying his motion for appointment of counsel, in denying his motion for a partial new trial, and in denying his supplemental state claims. We find that the district court did not err in denying Luken's various motions and AFFIRM in part. However, we find that Coody's appeal has merit. Because the judgment was not in conformity with the jury verdict, we REVERSE and REMAND.

FACTS

Luken alleged that he was subjected to the use of excessive force by prison guard Smith and that Sergeant Samuel Coody, a supervisor, did not intervene on Luken's behalf during the incident. At the time of the incident, psychotropic medicine had been ordered because Luken was depressed and had deliberately cut his own wrist. After his wrist was taped and his hands were cuffed behind his back, Luken was placed in a cage. Five officers wearing protective gear were brought into the area, and videotaping was started in case Luken did not cooperate in receiving the ordered injection. Luken cooperated, and was being returned to his cell when the use of force incident occurred. Smith was behind Luken holding the handcuffs and apparently decided to go ahead of Luken through the doorway. In stepping ahead of Luken, he twisted the handcuffs, and Luken complained. Smith then

2

slammed Luken against the door of the cage, picked him up, and threw him to the floor a total of three times. The other officers, including Sergeant Chaney who was supervising the force-move team, had already gone through the door ahead of Smith and Luken and had their backs to the two combatants. Once Luken was on the ground, Smith planted his knee in the small of Luken's back, and the other officers twisted Luken's legs up behind him while leg irons were brought. As a result of the incident, Luken's face was bruised, he required three stitches in his elbow, and he complains that he still suffers from lower back pain.

Luken testified that he appealed to Sergeant Coody, who was present but out of camera range, but that Sergeant Coody did nothing. Sergeant Coody testified that he was behind the camera when the injection was being administered, but that immediately afterwards he went to the captain's office and did not witness the use of force. The TDCJ's Internal Affairs Division investigated the incident and found that Luken had been subjected to the use of excessive force by Smith and other officers. As a result, Smith was fired and the other officers involved in the incident were reprimanded. The investigator confirmed Coody's testimony that he was present only during the injection and had no further involvement in the incident.

Luken requested a trial by jury. Following a Spears hearing, the court dismissed TDCJ Director James Lynaugh from the suit and ordered that service be made on defendants Sergeant Coody and Officer Casey Joe Smith. The marshal was unable to make service on Smith, leaving Coody as the only served defendant. The trial court appointed a "stand-by" attorney for Luken. The attorney attended the trial, but Luken conducted his own case. Shortly after the trial began and out or the jury's hearing, the trial court expressed its concern that Luken had sued the wrong defendant. The court was concerned that in failing to tell Luken that he should have sued Chaney rather than

3

Coody, the TDCJ had not complied with the discovery orders. Chaney was even present outside the courtroom, having been called as a witness. In the early part of the trial, Luken did not seem to believe that he had sued the wrong person, though he admitted that he had read the use of force report. Over the course of the trial, the trial court considered several possible ways of dealing with the situation. The court considered ordering Chaney substituted in the case, considered submitting Chaney's name to the jury as a potentially liable party, and considered the possibility of granting a summary judgment against Chaney if Chaney were to admit his role in the incident in the course of his testimony. The trial court strongly felt that the state should have settled the case.

Finally, the trial court decided to deny Luken's mid-trial motion to add Chaney as a defendant, finding that the State thought that Luken knew what he was doing, and that it would be prejudicial to Chaney to add him as a defendant:

> Mr. Luken:  I would like to know if under Rule 15(c), Federal Rules of Civil Procedure, if I can amend my complaint?
>
> The Court:  And do what, add what?
>
> Mr. Luken:  Add Sergeant Chaney.
>
> The Court:  I think that we would have some due process problems, from his perspective at this point in time. If I added him, it would only be for the purpose of getting a proxy vote from the jury. It would not be binding upon him.
>
> But as far as I'm concerned, it would be binding upon -- from a perspective upon the lawyers and the Department who had a responsibility to reveal this information. I don't know what it is that he said. I'm concerned now as well about your statement that you knew he was there and you did not -- you chose not to sue him.

4

Mr. Luken:     The reason why I did that is because I read a case, Harris versus Chancellor, in the Fifth Circuit Court of Appeals where it states that if a supervisor fails to intervene, that you can sue that supervisor.

The Court:     Right.

Mr. Luken:     I did not know that you can sue several supervisors or two supervisors. I only thought you can sue one supervisor because I don't know much about law. I interpreted that as you can sue a supervisor.

The Court:     Well, I'm not sure that that is -- I haven't seen any inmates who have been bashful yet. They sue everybody they can think of. And then they wait on me who it is they can keep in the lawsuit.

. . . .

I'm of the opinion that at this point to permit you to amend -- part of the reason I back off of my admonition is because if there is anything that should be done, it should be in the nature of a sanction as opposed to something that might -- a sanction against the prison officials, the attorneys or whomever, but I don't know that it would -- I'm of the opinion that that would not be a reason to prevent Mr. -- What's his name"

Mr. Luken:     Chaney.

The Court:     -- Chaney from having his day in court. R.5, 275-78.

The jury was given four special interrogatories to answer. In response to Jury Question No. 1, the jury found that Coody had failed to intervene or render assistance to Luken during the use of excessive force. The jury determined in its answer to Jury Question No. 2 that Coody's failure to intervene was not a proximate cause of the injuries sustained by Luken. The jury also concluded in its answer to Jury Question No. 4 that Coody's failure to intervene was not done maliciously and willfully or with reckless or callous disregard for Luken's rights. As directed, the jury did not

5

respond to Jury Question No. 3 concerning damages and punitive damages because it had answered "no" to the proximate cause question of Jury Question No. 2.

The district court entered a memorandum order in which it determined that the undisputed evidence at trial showed that unnamed defendants acted intentionally and used unlawful excessive force against Luken which resulted injury. The district court noted that Coody had asserted that he was not present during the incident and had no knowledge of the incident. The court also stated that the "plaintiff's injuries came exclusively from the use of force that was inflicted on him on the occasion by the acts of 'unnamed defendants [sic].'"

The district court interpreted the jury's response to the first interrogatory as a finding that Coody was present during the use of excessive force and that he acted with deliberate indifference to the circumstances giving rise to the injuries sustained by Luken. The court then found that Jury Question No. 2 was superfluous because there was "no dispute" relative to the causal connection between the injuries sustained by Luken and the use of force. The court did not discuss Question No. 4, but instead determined that the jury had found that Coody either wanted harm to come to the plaintiff or totally lacked concern for his welfare during the incident.

The district court determined that the jury's affirmative response to Jury Question #1 established that the jury had found that Coody was deliberately indifferent, and that Luken had prevailed in the case. The district court then awarded Luken nominal damages of $200 and ordered him to present affidavits stating the time expended in the preparation and trial of the case. Subsequently, the court awarded Luken's stand-by trial counsel attorney's fees of $3,350.

## DISCUSSION

6

Coody argues that the district court erred in failing to enter a judgment in accordance with the jury's verdict because the jury's answer to Jury Question #1 is consistent with his testimony that he was not present when the use of force occurred and the jury's answers to the rest of the questions showing no causation and no reckless or willful disregard are consistent with their answer to the first question. He further argues that the district court in effect entered a judgment as a matter of law under Fed. R. Civ. P. 50 and that as Luken had not made the prerequisite motion, he should not have been awarded the judgment. Coody further argues that the award of damages and fees was in error because the jury had found in his favor, and that he cannot be found liable for damages in the absence of a finding of deliberate indifference by the jury.

While federal district courts have considerable latitude in interpreting special interrogatories, there are limitations to that discretion. P & L Contractors, Inc. v. American Norit Co., Inc., 5 F.3d 133, 137-38 (5th Cir. 1993). Under the Seventh Amendment and Fed. R. Civ. P. 58(2), a district court is bound to enter judgment on the jury's answers if they are clear and consistent. Id. If the jury's answers to special interrogatories are clear and consistent, then a judgment not in accord with those answers must be reversed. See P & L Contractors, 5 F.3d at 138. Therefore, we must consider whether the jury's answers are clear and consistent under the circumstances of the instant case.

A convicted inmate's failure-to-protect claim is evaluated under the Eighth Amendment's "deliberate indifference" standard. Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1976-79, 128 L. Ed 2d 811 (1994). A prison official is deliberately indifferent if the official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and he draws that inference. Id. at 1979. Jury Question No. 1 asked whether Coody failed to intervene or render assistance to Luken during the use of excessive force. The jury answered "Yes." The jury's answer

7

to this question merely indicates that Coody did not intervene, it does not indicate whether Coody was present or not during the use of force. In its answer to Question No. 2, the jury found that Coody's failure to intervene was not a proximate cause of the injuries sustained by Mr. Luken, and in Question No. 4, the jury found that Coody's failure to intervene was not done maliciously and willfully or with reckless or callous disregard for Luken's rights. Thus, clearly the jury's answers were consistent with a finding that Coody had not been deliberately indifferent. The trial court's interpretation to the contrary is not consistent with the jury's verdict and must therefore be reversed, as must the award of damages and attorney's fees. Because we are reversing on the basis of this inconsistency, Coody's argument that Luken had not filed a motion for judgment as a matter of law is moot.

Luken argues that the district court abused its discretion in denying his request for appointment of counsel. He asserts that his severe blurred vision prevented him from properly conducting discovery and exercising his right to sue every officer who participated in the attack. A district court may appoint counsel in civil rights cases presenting "exceptional circumstances." Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982). Among the factors to be considered are the complexity of the issues and the plaintiff's ability to represent himself adequately. Ulmer, 691 F.2d at 213. Luken first asserted that his blurred vision was a negative factor in his self-representation almost two years after the magistrate judge denied his initial motions for appointment of counsel and almost nine months after the Spears hearing. Furthermore, Luken's numerous coherent and legally supported pleadings in the district court contradict his allegation that his severe blurred vision hampered his ability to represent himself during the pretrial proceedings. Thus, Luken has not shown that the district court abused its discretion in failing to appoint him counsel prior to trial.

Luken also argues that the district court erred in denying his supplemental state claims. In his original complaint, Luken generally alleged that he was seeking relief under state law. However, he did not allege in his complaint or in any other pleading the specific basis for his claims under state law, nor has he indicated any specific state law claims in his cross-appeal. Pursuant to Fed. R. App. P. 28(a)(6), an appellant's argument must contain the contentions of the appellant on the issues presented, the reasons therefore, and citations to the authorities, statutes, and parts of the record relied upon. Contentions not briefed in accordance with Rule 28 are deemed waived and will not be considered on appeal. Zeno v. Great Atlantic & Pacific Tea Co., 803 F.2d 178, 180 (5th Cir. 1986). As Luken did not identify any specific state law claims in his brief or anywhere else, they are deemed waived.

Luken further argued that the district court erred in denying his motion for a partial new trial to allow the jury to determine his damage claim, and argues that the jury instructions erroneously directed the jury not to consider the issue if it determined that Coody's conduct was not the proximate cause of his injuries. Where there is no error in the interrogatories and instructions presented to the jury, and the jury's answers to the interrogatories are not inconsistent, a district court's denial of a partial new trial should be affirmed. Wood v. Carboline Co., 736 F.2d 301, 303 (5th Cir. 1984). Consistent with the jury's findings in Question No. 2 and Question No. 4 that Coody's failure to intervene was not malicious or willful and was not the proximate cause of Luken's injuries, the jury refused to award the damages outlined in Question No. 3. Because the interrogatories are consistent with the standard of deliberate indifference, and the jury's answers to those interrogatories are internally consistent, Luken is not entitled to a partial new trial.

Finally, Luken argues that the district court erred in denying his request to amend his complaint to add Chaney as defendant. He contends that the prison administrators and the defendant thwarted his attempts to discover the names of the individuals involved in the incident, and argues that the amendment would not have been prejudicial because all parties were aware that not all the participants had been sued.

A party must obtain leave of court to amend his complaint once responsive pleadings have been filed, and leave to amend is to be freely given when justice so requires. Fed. R. Civ. P. 15(a). Furthermore, parties may be dropped or added by order of the court on motion of any party or of its own initiative at any state of the action and on such terms as are just. Fed. R. Civ. P. 21. "In deciding joinder motions, courts emphasize pragmatic considerations rather than rigid formalism: the maximum effective relief with the minimum expenditure of judicial energy. " Gentry v. Smith, 487 F.2d 571, 579-80 (5th Cir. 1973)(citations omitted). This concern with the practical gives the district judge wide latitude in deciding when the promise of a speedy resolution to a controversy in a single action outweighs any inconvenience to the parties caused by a failure to conform strictly to the requirements of pleading, and it is permissible to join a defendant at any stage of the litigation in the trial court so long as it is given sufficient notice and opportunity adequately to defend its interests. Gentry, 487 F.2d at 580. Thus, a district court has the discretion to add a defendant even on remand after appeal under Rule 21, if the court finds it would be practical to do so and provided the defendant has sufficient notice and opportunity to defend its interests. See Gentry, 487 F.2d at 580. A court will typically refuse a change that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action. 7 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §1688 (1986).

10

In the instant case, the district court expressed concern that Luken might not have known before trial that he had named the wrong defendant. However, well before trial, Luken had received the investigative report that indicated that Chaney was assigned as supervisor of the use-of-force team while Coody claimed he was not even present during the incident. Thus, Luken had access to the needed information, and opportunity to amend his complaint well before trial, though he apparently mistook Coody for Chaney until well into the trial. The district court considered carefully whether there would be any practical way to add Chaney as defendant, yet ultimately decided that Chaney would not have an adequate opportunity to defend his interests, though he knew, or should have known that but for a mistake concerning his identity, the action would have been brought against him. (See Moore v. Long, 924 F.2d 586 (5th Cir. 1991)(substituting a party defendant and relation back so as to toll a statute of limitations under Fed. R. Civ. P. 15(c)). The district court did not abuse its discretion in denying the motion to amend at that late stage in the proceedings.

In conclusion, the denial of Luken's motion for appointment of counsel is AFFIRMED, the denial of his motion for partial new trial is AFFIRMED, and the denial of his motion to amend is also AFFIRMED. Furthermore, Luken's supplemental state law claims are deemed waived. The district court's judgment in favor of Luken as well as the awards of damages and attorney's fees are REVERSED, and the case is REMANDED with instructions to enter judgment in accord with the jury's verdict. Because this case has been decided without oral argument, Luken's "Motion to Overrule the Defendant's-Appellant's Motion for Oral Argument" is denied as moot.